**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MAMADOU YATERA,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, MOSHANNON VALLEY PROCESSING CENTER, et al.,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 26-992 |

**MEMORANDUM OPINION**

Pending now before the court is a *pro se* Petition for Writ of Habeas Corpus (ECF No. 4) and Motion for Immediate Release (ECF No. 5) filed by Mamadou Yatera ("Yatera"). On June 24, 2026, Respondents filed their Response to both the petition and the motion (ECF No. 12). The court concludes that it needs a hearing on the matter.

## I. Factual and Procedural Background

Yatera, a citizen of Mauritania, entered the United States unlawfully on or about June 16, 2024 (ECF No. 4-1 at 13). He was arrested by Border Patrol, who released him on an order of recognizance and told him to appear for removal proceedings at a future date (ECF No. 12 at 2; ECF No. 4-1 at 12). On October 20, 2025, "ICE-ERO later performed a custody re-determination" and "detained Yatera again for the purpose of removal proceedings." (*Id.*).

On November 24, 2025, an immigration judge "found Yatera inadmissible and ordered him removed from the United States, but granted withholding of removal to [Yatera's] home country of Mauritania under 8 U.S.C. § 1231(b)(3)" (ECF No. 12 at 2). Respondents did not appeal that decision.

For the past 8 months, DHS alleges it "has worked to facilitate Yatera's removal to a third

country other than Mauritania[,]" but to this date, a third country has not been found (ECF No. 12 at 2-3). Respondents summarized their efforts in their Response: "Since December 2025, DHS has worked to facilitate Yatera's removal to a third country other than Mauritania. On January 27, 2026, ERO contacted ICE's Headquarters Removal and International Operations division (HQ-RIO) to request assistance with third country removal, and also spoke with Yatera to determine whether he had any ties with any third countries. HQ-RIO advised in March 2026 that Yatera would be removed to a third country and that ERO would be notified as soon as a third country was identified. At a review of Yatera's detention on March 11, 2026, ERO determined that Yatera 'would remain in custody due to expected identification of and removal to a third country.' HQ-RIO has not reported any developments in the [now five] months since March 2026 on the prospects for Yatera's third country removal." (ECF No. 12 at 2-3) (internal citations removed).

Respondents submitted a declaration from deportation officer Brock Fisher ("Fisher") (ECF No. 12-1). Fisher described the efforts of the local Enforcement and Removal Operations ("ERO") team to obtain updates about Yatera's removal, and the lack of response from the headquarters of ERO. Fisher opined: "Due to DHS's recent successes in completing third country removals of West African nationals, it is anticipated that Yatera's removal from the United States will occur upon identification of a country." *Id.* at 3. Fisher did not provide any information about when a country might be identified.

In his petition, arguably filed prior to the 6-month presumptive period of the reasonableness of his detention, Yatera asserts that he "has been subjected to prolonged immigration detention without adequate constitutional safeguards" in violation of the Fifth Amendment (ECF No. 4 at 6). In particular, he argues that he has been detained for more than 6 months without a "constitutionally adequate custody hearing" and that his removal "is not reasonabl[y] foreseeable"

due to the grant of withholding of removal to Mauritania (*Id.*). He also alleges that he was never "given an opportunity to show that [he is] not a danger or flight risk[,]" despite his lack of criminal history, and that his "[c]ontinued incarceration bears no reasonable relation to any legitimate governmental purpose." (*Id.*). As for relief, he requests immediate release, a constitutionally adequate bond hearing before an immigration judge, or any other "additional relief this Court deems just and proper." (*Id.* at 7).

Respondents assert that Yatera's detention is "proper under 8 U.S.C. § 1231 and the Due Process Clause." (ECF No. 12 at 1). They argue that Yatera has failed to exhaust his administrative remedies within the Department of Homeland Security ("DHS")[1] and that he has failed to rebut the necessary presumption in *Zadvydas v. Davis*, 533 U.S. 678 (2001) (*Id.* at 4-10). They also allege that DHS is actively working on Yatera's removal to a third country and thus his detention is justified (*Id.* at 10-11).

## II. Legal Analysis

In *Zadvydas,* the Supreme Court established that a 6-month period of detention was presumptively reasonable under § 1231. *Zadvydas*, 533 U.S. at 701. Here, because sufficient time passed since the filing of his petition, Yatera has now been held for more than 6 months in post-

[1] The prudential exhaustion requirement that Respondents claim applies is excused here. "[E]ven when courts might otherwise require exhaustion, they may excuse it when, for instance, waiver, estoppel, tolling or futility applies. We also excuse prudential exhaustion when the challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights." *United States v. Dohou*, 948 F.3d 621, 628 (3d Cir. 2020) (internal punctuation and citation omitted). Here, Enforcement and Removal Operations ("ERO") reviewed Yatera's custody status on October 20, 2025, and March 11, 2026, and both times, it determined that his detention was justified; thus, any future request for review by Yatera would likely be futile. *See* ECF 12-1 at 1-2. Therefore, the Court declines to require exhaustion here. *See, e.g., Kargapolov v. Oddo*, No. 3:26-CV-00755, 2026 WL 1413057, at *2 (W.D. Pa. May 20, 2026) (finding in a similar case that the prudential exhaustion requirement is excused); *Zheng v. Warden of Moshannon Valley ICE Ctr.*, No. 3:26-CV-477, 2026 WL 1992148, n.1 (W.D. Pa. July 9, 2026).

removal immigration detention.[2] *See* ECF No. 12 at 7-8. Thus, his detention is no longer presumptively reasonable, and the next step of the analysis in *Zadvydas* applies (i.e., whether there is a significant likelihood of removal).

"[T]his 6–month presumption, of course, does not mean that every alien not removed must be released after six months." *Zadvydas*, 533 U.S. at 701. "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. 'Significant likelihood' is not "the absence of any prospect of removal[,] no matter how unlikely or unforeseeable[,]" nor is it showing that removal is impossible. *Id.* at 702. Rather, 'significant likelihood' is a "**good reason to believe that there is no likelihood of removal in the reasonably foreseeable future**[.]" *Id.* at 701 (emphasis added); *see Joseph v. United States*, 127 F. App'x 79, 81 (3d Cir. 2005). "[A]s the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701.

A burden-shifting standard applies. After the 6–month period, the burden is on the alien to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. If the alien meets that burden, "the Government must respond with evidence sufficient to rebut that showing." *Id*.

Although 'good reason' was not defined by the Supreme Court in *Zadvydas*, lower courts have since interpreted 'good reason' to include providing evidence to substantiate why removal is

[2] Although there may be some debate regarding exactly when Yatera's post-removal detention began (*see* ECF No. 12 at 7-8), the court finds it unnecessary to resolve this issue because, at the time of writing this Memorandum Opinion, it has been over 6 months since either date. *See, e.g., O.A.S. v. Oddo*, No. CV 25-316J, 2025 WL 3539058, at *1 (W.D. Pa. Dec. 10, 2025) ("Thus, while the parties disagree as to the date on which Petitioner's order of removal became final, it is beyond dispute that Petitioner has been subject to a final order of removal since April 14, 2025, at the latest. This is almost eight months as of the date of this writing.").

unlikely. *See, e.g., Joseph*, 127 F. App'x at 81 (stating that the petitioner did not show good reason where he failed to produce any documentary evidence). Other judges in this district have found that 'good reason' was provided if the Petitioner was unable to be removed to his home country and demonstrated that there was no third country option currently available. *See, e.g., Ebeid v. Warden of the Moshannon Valley Processing Ctr.,* Civil Action No. 25-411J, 2026 WL 292179, at *3 (W.D. Pa. Feb. 4, 2026) ("[Petitioner] has been granted withholding of removal from his country of origin, precluding his removal there. Further, there is no indication on the record that Petitioner has any ties to any third country, or that any third country otherwise has expressed a wil[ling]ness to accept him, or has begun preparing travel documents."); *Gonzalez v. Oddo*, No. 3:24-CV-00293-RAL, 2026 WL 1361429, at *3 (W.D. Pa. Apr. 28, 2026) ("First, the CAT deferral of Petitioner's removal to El Salvador, the only country to which he has a claim to citizenship, supports that his removal is unlikely to occur in the reasonably foreseeable future. This deferral will continue until the Government finds a third country that will accept Petitioner."); *Kargapolov v. Oddo*, No. 3:26-cv-00755, 2026 U.S. Dist. LEXIS 111491, at *6 (W.D. Pa. May 20, 2026) ("The repeated, explicit and definitive refusals to issue travel documents by Russia, the country designated for Petitioner's removal, after years of DHS unsuccessfully seeking travel documents from that country, is more than adequate to shift the burden to Respondents to rebut Petitioner's showing that his removal is not reasonably foreseeable.").

Each of those decisions is based on somewhat different facts. Here, Yatera has been in the United States for a relatively short time and his total time in detention did not exceed the *Zavydas* presumptively reasonable time period when he filed this petition. In essence, Yatera points only to the withholding of removal to Mauritania and the lack of any other progress on his removal.[3]

---

[3] The court is mindful of the challenges a pro se litigant at Moshannon like Yatera may face in obtaining discovery to make the showing necessary to meet his burden.

Respondents summarily submit that they are working on his removal, but they do not identify concrete progress. No third country has been identified, let alone agreed to accept Yatera. Respondents, in essence, point to their past success with removals of citizens from other West African nations – but do not point to any action in Yatera's own removal. To date, Respondents did not show there is a country currently able or willing to accept him. Fisher's Declaration reflects that the headquarters of Removal International Operations did not yet respond to the local deportation officer's request for a third country designation. *See* ECF No. 12-1 at 2-3. *Compare Romero-Roblejo v. McShane*, No. CV 26-810, 2026 WL 1500973 (W.D. Pa. May 29, 2026) (holding that removal in the reasonably foreseeable future was likely due to the government's representation that it is 'actively working' to locate a safe country for removal).

On this record, the court is unable to determine whether either party met the applicable burden. The court, therefore, will hold an evidentiary hearing by videoconference on September 22, 2026 at 11:00 a.m., for each side to present evidence and argument. If Yatera would like to be represented by counsel at that hearing, the court will request counsel to represent him (although the court cannot order any attorney to do so.).

Conclusion

For the reasons set forth above, the Petition for Writ of Habeas Corpus, (ECF No. 4), will be TAKEN UNDER ADVISEMENT. An appropriate Order will be entered.

BY THE COURT:

Dated: August 25, 2026

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Court Judge